UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FAWN ANNETTE ANGERER,

      Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

      Defendant.

**DECISION AND ORDER**
**17-CV-739**

# INTRODUCTION

    Plaintiff Fawn Annette Angerer brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied her application for supplemental security income ("SSI") under Title II of the Act. Dkt. No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405 (g).

    Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12 (c). Dkt. Nos. 10, 12. For the reasons that follow, the plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is remanded for further administrative proceedings.

# BACKGROUND

    On May 23, 2013, the plaintiff protectively filed applications for SSI and DIB with the Social Security Administration ("SSA") alleging disability since March 28,

1

2012.  Tr.[1,2] 358-359, 360-365.  On September 3, 2013, the plaintiff's claims were denied by the SSA at the initial level.  Tr. 257-271.  On May 12, 2015, the plaintiff, with her attorney, appeared and testified before Administrative Law Judge, Eric Glazer ("the ALJ").  Tr. 191-218.  On October 20, 2015, the plaintiff, with her attorney, appeared before the ALJ again and testified along with a vocational expert ("VE").  Tr. 219-256. On March 24, 2016, the ALJ issued a decision finding the plaintiff was not disabled within the meaning of the Act.  Tr. 170-190.  Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on June 9, 2017. Tr. 1-3.  Thereafter, the plaintiff commenced this action seeking review of the Commissioner's final decision. Dkt. No. 1.

**LEGAL STANDARD**

I.     **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1] References to "Tr." are to the administrative record in this matter.
[2] The plaintiff was not insured for DIB (date last insured September 30, 2002).  Accordingly, this action concerns her SSI claim only.  Tr. 358-359, 389.

(quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II.	Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's

3

residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.    The ALJ's Decision**

The ALJ's decision analyzed the plaintiff's claim for benefits under the process described above. At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since February 22, 2013. Tr. 175. At step two, the ALJ found that the plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine; obesity; asthma; and urinary incontinence. *Id.* Here, the ALJ also found the plaintiff's anxiety and mood disorder were non-severe impairments. *Id.* At

4

step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listings impairment. Tr. 178.

Next, the ALJ determined that the plaintiff retained the RFC to perform light work with additional limitations. Tr. 179. Specifically, "the claimant can sit for six hours in an eight-hour workday and stand and-or walk for six hours in an eight-hour workday. She can lift and/or carry and push and/or pull, twenty pounds occasionally and ten pounds frequently. She would need the option to sit and/or stand, once per hour for five minutes at a time. She could occasionally climb ramps and stairs, stoop, and kneel. However, she can only incidentally crouch, no more than 1/6 of an eight-hour shift. She can never climb ladders, scaffolds, or crawl. The claimant must avoid concentrated exposure to dusts, odors, fumes and pulmonary irritants. She would be off-task for two-to-five minutes every one hour for rest room breaks. Lastly, she would be absent once per month, at two-hour intervals each, for prearranged mental health provider appointments, including vicinity travel to and from the worksite." *Id.*

At step four, the ALJ relied on the VE's testimony and found the plaintiff retained the RFC to perform her past relevant work as a "telephone representative." Tr. 184. Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act from February 22, 2013, through March 24, 2016. Tr. 186.

**II.     Analysis**

The plaintiff argues that the ALJ's decision is unsupported by substantial evidence where the ALJ improperly relied on his own lay opinion in determining specific RFC limitations to accommodate the plaintiff's urinary incontinence symptoms and failed to evaluate the plaintiff's obesity which he found a "severe impairment."[3] Dkt. No. 10, 12,17.  The Commissioner contends that the decision is supported by substantial evidence where the ALJ properly determined the plaintiff's RFC in consideration of the plaintiff's urinary incontinence and obesity.  Dkt. No. 12, 17, 22.  For the reasons set forth below, this Court finds that the ALJ's assessment of the plaintiff's RFC, particularly the limitations associated with the plaintiff's urinary incontinence, is unsupported by substantial evidence and that remand is required for further administrative proceedings.

**A.  The RFC Finding is Unsupported by Substantial Evidence**

In deciding a disability claim, the ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue,* 508 R. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision."  *Id.*  However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F.Supp.3d, 586 (W.D.N.Y. 2018) (quotation omitted).  Where the "medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate theses diagnoses to specific residual functional capacities such as those set out in 20

---

[3] Because the Court has determined that remand of this matter for further proceedings is necessary, this decision does not address the plaintiff's obesity argument.

C.F.R. § 404.1567(a) … [the Commissioner may not] make the connection himself."
*Dennis v. Colvin*, 195 F.Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted). Where the ALJ makes an RFC determination without a medical opinion evaluating the claimant's functional capabilities, the RFC is not supported by substantial evidence. *Lawton v. Comm. of Social Security*, 351 F. Supp.3d 378, 383 (W.D.N.Y. 2019) (citation omitted) (finding the ALJ's assessment of RFC limitations relating to claimant's prostatitis was based on her own lay interpretation of medical records and therefore, not supported by substantial evidence).

### 1. Plaintiff's Testimony Regarding Urinary Incontinence

During her first administrative hearing on May 12, 2015, the plaintiff testified that before her surgery in January 2015, her urinary frequency was every twenty minutes to a half-hour and following the surgery, her urinary frequency was every two hours. Tr. 205. The plaintiff also testified that she had been written up for taking too many bathroom breaks during her previous employment with the Data Listing Service. Tr. 205.

However, at her second administrative hearing on October 20, 2015, the plaintiff testified that she was beginning to have the same problems with urinary frequency as she had prior to her January 2015 surgery where she was using the bathroom ten-to-fifteen times per day for about ten-to-fifteen minutes each time to fully relieve herself and was using pads. Tr. 232. The plaintiff also testified that in April 2015, she was using the bathroom six to seven times during the day for about three-to-

four minutes. *Id.* The plaintiff also testified that she had recently visited her urologist and that her Vesicare prescription was increased. *Id.*

The VE testified that the occupational base would be greatly eroded for an individual requiring up to fifteen five-minute restroom breaks during an eight-hour workday and the individual would be unemployable if they required more than five minutes per restroom break up to fifteen times in an eight-hour workday. Tr. 254.

**2. The ALJ's Assessment of the Plaintiff's Urinary Incontinence**

In his decision, the ALJ summarized the plaintiff's testimony in one sentence, "Lastly, she testified that she needed to use the bathroom frequently throughout the day." Tr. 180.

At step two of the disability analysis, the ALJ concluded that the plaintiff's urinary incontinence was a severe impairment. Tr. 175. The ALJ noted that the plaintiff's severe impairment of urinary incontinence is not addressed in the Listings of Impairments. However, he determined that urinary incontinence is similar to interstitial cystitis (also not addressed in the Listings but detailed in SSR 15-1p). Tr. 179. The ALJ concluded that the record does not support the plaintiff's urinary incontinence meeting one of the impairments in the Listings of Impairments. *Id.*

In assessing the plaintiff's RFC, the ALJ explained:

"On balance, as previously noted, the claimant's urinary incontinence waxed and waned, and was generally under control with surgery. With that, I have

> considered the medical evidence of record and find that as a result of her urinary incontinence, the claimant would be off-task for two-to-five minutes every one hour, for rest room breaks."

Tr. 182. The ALJ rejected the plaintiff's testimony relating to the severity of her urinary incontinence symptoms, explaining:

> "I determine and conclude that the claimant's allegations are partially credible and not to the extent alleged. As noted above there are many inconsistencies between the claimant's function report, her testimony and clinical observations made by the examining and treating doctors. Specifically, treatment notes from Western Urology noted that the claimant's urinary incontinence improved with surgery. Giving the claimant the benefit of the doubt and reading the record in a light most favorable to her, I have limited her to light work, with postural and environmental limitations and the need for an hourly restroom break."

Tr. 183-84. The RFC permits the plaintiff to be off-task for two-to-five minutes every one hour for restroom breaks. Tr. 179.

In support of the RFC determination, the ALJ referenced portions of the plaintiff's urology treatment records beginning on April 2, 2013, when she established treatment with urologist, Ryan White, M.D. ("Dr. White") of Western New York Urology Associates for urinary incontinence. Tr. 181. As part of her initial treatment, the plaintiff created a voiding diary describing her daytime urinary frequency from every thirty minutes to three hours. *Id.* On May 9, 2013, Dr. White performed bladder sling surgery on the plaintiff to treat her pelvic organ prolapse and mixed urinary incontinence. Tr. 638-39. On May 24, 2013, the plaintiff reported to Dr. White that she was doing well and was grateful for the results. Tr. 643.

9

On August 29, 2013, the plaintiff underwent surgical revision of her anterior vaginal wall. Tr. 715. On September 11, 2013, the plaintiff reported pelvic pain with frequency every two hours and her urinalysis was positive for blood and leukocyte esterase. Tr. 716. Dr. White prescribed Ultram and Vesicare to treat the plaintiff's urinary symptoms. Tr. 716-17. On October 24, 2013, the plaintiff reported that Vesicare helped substantially with pelvic discomfort and denied incontinence. Tr. 718. Her urinalysis revealed trace amounts of blood and Dr. White altered her prescription to Detrol and noted that she was "much improved." *Id.*

The ALJ noted that the plaintiff's medical record did not contain any treatment records from Western New York Urology from October 2013 through October 2014. Tr. 182. On October 27, 2014, Dr. White examined the plaintiff and noted that she continued on Detrol, which was helpful for urgency and frequency, however, the plaintiff reported an increase in incontinence since the Summer that required her to change clothing four times per day because she was not wearing pads. Tr. 736. Dr. White recommended a repeat urodynamic study to further investigate her symptoms and discussed possible surgical intervention in addition to her Detrol prescription. Tr. 737.

On November 24, 2014, the plaintiff reported that she continued to be bothered by stress urinary incontinence requiring five pads per day with a sensation of having to go all the time. Tr. 738. Dr. White reviewed her urodynamic study which revealed a large bladder capacity and evidence of stress incontinence with intrinsic

10

sphincter deficiency ("ISD") and discussed the risks and benefits of surgical intervention for the stress incontinence, which the plaintiff agreed to undergo. Tr. 739.

On January 29, 2015, the plaintiff underwent an autologous fascia bladder neck sling with cystoscopy for her stress urinary incontinence. Tr. 856. On October 19, 2015, upon examination with Dr. White, the day before her second administrative hearing, the plaintiff reported being bothered by continued daytime frequency (but did not specify the frequency) and noted mild stress incontinence but not to the point of requiring pads. Tr. 885. Dr. White increased the plaintiff's Vesicare prescription to treat her increased frequency and instructed her to follow-up in one month. Tr. 886.

Although the plaintiff was continuously treated for her urinary incontinence by Dr. White throughout the relevant period, the record does not contain a function report from Dr. White or any other physician, evaluating the effect of plaintiff's urinary incontinence symptoms on her ability to perform work-related functions on a daily basis. In support of his RFC determination, the ALJ accorded "great weight" to the opinion of the consultative examiner, Samuel Balderman ("Dr. Balderman"), who examined the plaintiff on August 12, 2013, and provided the only physical function report in the plaintiff's medical record. Tr. 182-83. Dr. Balderman noted the plaintiff's first surgery for urinary incontinence performed in May 2013 and diagnosed the plaintiff with status post-surgery for urinary incontinence. Tr. 684, 686. Dr. Balderman did not assess the plaintiff's limitations relating to her urinary incontinence.

This Court finds that the ALJ's assessment of limitations relating to the plaintiff's urinary incontinence was based on his own lay interpretation of the medical record. *See Lawton*, 351 F.Supp.3d 378, 385 (W.D.N.Y. 2019) (finding the ALJ erroneously used her lay interpretation, in the absence of any medical opinion evidence relating to the claimant's prostatitis, to assess a specific RFC limitation of one-to-three minute restroom breaks every thirty minutes). The ALJ accorded great weight to Dr. Balderman's consultative examination opinion rendered in August 2013, which did not account for the plaintiff's subsequent treatment including surgical procedures and did not evaluate the plaintiff's capacity to perform work functions in accordance with her urinary incontinence symptoms. This Court is unable to ascertain how the ALJ, who is not a physician, concluded that hourly restroom breaks for two-to-five minutes would accommodate her urinary incontinence symptoms, without a medical opinion.

The Commissioner contends the ALJ properly evaluated the plaintiff's urinary incontinence by extensively discussing the plaintiff's medical records concerning her urinary incontinence and considering the plaintiff's testimony, in support of assessing the additional RFC limitation of hourly two to five-minute bathroom breaks. Tr. 179-184. However, the Commissioner fails to address the fact that the record, albeit extensively evaluated by the ALJ, is devoid of any medical opinion for work-related limitations caused by the plaintiff's urinary incontinence, which the ALJ determined was a severe impairment. *See Jones v. Colvin*, No. 14-CV-556S, 2015 WL 5126151, at *4 (W.D.N.Y. Sept. 1, 2015) (holding that "because the ALJ concluded that Plaintiff's depression was significant enough to constitute a severe impairment, his subsequent

failure to obtain a medical assessment of the extent of that impairment from either a treating or consultative examiner quantifying Plaintiff's mental limitations rendered the record incomplete").  Accordingly, the RFC finding is not supported by substantial evidence and this error requires remand.  On remand, the ALJ should obtain an opinion relating to what accommodations the plaintiff should be afforded based on her urinary incontinence diagnoses and frequency symptoms in order for the ALJ to fully explain his reasoning for affording the plaintiff any specific accommodation.

## CONCLUSION

For the reasons stated above, Defendant's motion for judgment on the pleadings (Dkt. No. 12) is DENIED, and Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is GRANTED to the extent that the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings.

DATED:  Buffalo, New York
        March 27, 2019

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**